Cruz G. BARRERA et al., Appellants,

v.

F. C. GONZALEZ, Appellee.

No. 13670.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 21, 1960.

Rehearing Denied Jan. 11, 1961.

Gerald Weatherly, Laredo, Arnulfo Guerra, Roma, Werner A. Gohmert, Alice, for appellants.

Pope & Pope, A. J. Vale, Rio Grande City, for appellee.

POPE, Justice.

Whether a deed, absolute on its face, is in fact a mortgage is the subject of this appeal. F. C. Gonzalez, the grantee, sued Cruz Barrera, a widow, and her two minor children as heirs of his grantor, in trespass to try title. He recovered title to two city lots in Roma, Texas, in a trial before the court. Defendants urge that (1) the case

should be rendered, since all the evidence shows that the deed from Barrera to Gonzalez was intended as a mortgage, or that (2) the case should be remanded because the judgment is against the great weight of the evidence, and (3) the court erred in excluding certain evidence.

The legal principle involved is settled. A deed absolute on its face may be construed as a mortgage if the evidence, including parol evidence, shows that such was the intention of the parties. Wilbanks v. Wilbanks, Tex., 330 S.W.2d 607; Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972; Kokernot v. Gilstrap, 143 Tex. 595, 187 S.W.2d 368; Parmenter v. Kellis, Tex.Civ.App., 153 S.W.2d 965. "The criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability." 3 Pomeroy's Equity Jurisprudence, 4th Ed., § 1185; Parmenter v. Kellis, supra.

We overrule defendants' contention that all the evidence proves that the deed was intended as a mortgage. Gonzalez, the plaintiff grantee, introduced in evidence a general warranty deed dated November 26, 1957, from Guadalupe Barrera and wife. He explained that the continued possession of the property by the Barrera family was under a lease which he also introduced. It was signed only by Gonzalez and provided that Barrera could remain in possession until July 25, 1958, rent free. He testified that grantor owed him money and that the debt was discharged by delivery of the deed. This evidence for Gonzalez defeats the contention of no evidence.

However, we sustain the point that the judgment is against the great weight of the evidence. Gonzalez and Barrera were friends, and Gonzalez advanced funds to Barrera needed in the operation of a garage and filling station located on the lots in question. On April 29, 1957, Barrera gave Gonzalez his note for $1,030 payable in one

month. On September 26, 1957, Gonzalez also co-signed a note with Barrera for $14,560 pesos, payable to a bank in Mexico. A peso was worth about eight cents in American dollars. The note was due on January 10, 1958, and on that morning Barrera committed suicide. Gonzalez paid the note. According to two of Barrera's brothers, about three days after the suicide, Gonzalez sent for them and told them that Guadalupe Barrera owed him some money on some notes, and if he could have back the amount of the notes, he, Gonzalez, would return the deed to the property. At the time of trial, Gonzalez still held Barrera's note for $1,030 with no mark or endorsement of payment. This is some evidence of the continued existence of the debt. Ezell v. Fowler, Tex. Civ.App., 20 S.W.2d 1097; Hutton v. Pederson, Tex.Civ.App., 153 S.W. 176.

The deed from Barrera and wife to Gonzalez recited that as a part of the consideration, Gonzalez, the grantee, assumed the balance of an indebtedness the Barreras owed a lumber company, which was evidenced by a recorded lien and deed of trust on the property. However, after Barrera's death, his credit life insurance was used to discharge that debt, which amounted to more than $2,000. This is not disputed. Gonzalez knew about and permitted this discharge of a debt he says he assumed. Hence we find that Gonzalez testified that the deed discharged the debt, yet, in the face of the recitals in the deed, it was Barrera's life insurance which was used to discharge a debt which Gonzalez had assumed. We regard this as highly significant evidence that Gonzalez was still looking to and expecting Barrera to pay debts though the deed purported to discharge them. We regard the judgment as against the great weight of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Because the case must be remanded, we shall pass upon several matters of evidence which were excluded by the trial court. Defendants offered in evidence a suicide note,[1] an entry made in a book found in Barrera's bed room, and some notations on the back of an envelope. The substance of these notations is the same in each document. Each document was offered as exceptions to the hearsay rule, and specifically as admissions against Barrera's interest. The declaration which defendants claim is against their interest is the recitation that the declarant was indebted to Gonzalez in the sum of $2,919.24. The basis for this exception to the hearsay rule is the circumstantial probability that declarations against one's pecuniary interest are usually trustworthy. This is so because people are reluctant to speak falsely to their own detriment and ordinarily do not do so unless they speak the truth. To fall within the exception at all, there must be a statement which is against interest. 2 McCormick & Ray, Texas Law of Evidence, § 104. We regard the statements offered in this case as self-serving rather than disserving. The issue involved is not whether Barrera owed money. If that were the issue, the offered statements would be against interest. Instead, the statements are offered to prove that he did owe money and for that reason, he still owned the property. Unless the debt continued, title to the property was lost. The declarant served his own interest in making statements by which he would retain or recover the title to property he had deeded away. Statements which tend to prove the fact of debt serve his interest instead of defeating his interest. We do not reach the contention briefed by defendants, that any disserving statement will admit all, even the self-serving statements contained in the same document. In this case, even the statement that declarant owed $2,919.24

---

1. *"Excerpts From Suicide Letter page 3*
   " 'what I recommend to those to whom I leave said letter is that they have a good agreement with Francisco Gonzalez who has been the man who has helped me the most to him, when you can, pay him

2 notes that I signed for him for a sum of $2,919.24 total Dollars so that he can give you a paper in the clear of the service station I personally put up my garage to obtain said amount he is going to tell you how this has been done.' "

is self-serving to one who wishes to prove that he owes a debt secured by the property. The documents were properly excluded.

■ Defendants, by way of further proof that the deed was intended as a mortgage, called the notary who took Mrs. Barrera's acknowledgment. Gonzalez, the grantee, was not present, and there is no contention that either the grantee or the notary practiced any fraud or imposed upon Mrs. Barrera. The notary's statement was excluded. The statement would have been that he asked Mrs. Barrera if she understood the instrument, to which she replied that " * * * it is for some money that my husband is borrowing from Francisco C. Gonzalez." There are no rights of innocent purchasers involved, but this case is distinguishable from those in which the person wholly failed to appear before a notary, Humble Oil & Refining Co. v. Downey, 143 Tex. 171, 183 S.W.2d 426, and also from those in which the grantee was present with full knowledge that the acknowledgment was improperly taken. De West v. Barthelow, Tex.Civ.App., 136 S.W. 86. Under these circumstances, in the absence of fraud or imposition, the notary could not impeach his certificate by testifying that he failed to explain it to the grantor. Ward v. Weaver, Tex.Com.App., 34 S.W.2d 1093; Robertson v. Vernon, Tex.Com.App., 12 S.W.2d 991; Fagan v. Texas Co., Tex.Civ. App., 220 S.W. 346; Gomez v. Riddle, Tex. Civ.App., 334 S.W.2d 197, 198; 23 Tex.L. Rev. 284.

The judgment of the trial court is reversed and the cause remanded.

MURRAY, Chief Justice (dissenting).

I do not agree with the holding of the majority that the implied finding of the trial court to the effect that the warranty deed in evidence was what it purported to be on its face, an absolute conveyance of the land in controversy, was against the great weight of the evidence, and that for this reason the judgment must be reversed and the cause remanded.

The appellants undertook to prove that the deed, regular on its face, signed, acknowledged and recorded, was not what it purported to be, but was only a mortgage on the business homestead of Guadalupe E. Barrera and his wife, Cruz G. Barrera. The deed was executed by the Barreras on November 26, 1957. On January 10, 1958, Barrera committed suicide. Three days after the date of the deed, F. C. Gonzalez executed a lease and had it recorded, allowing the Barreras to remain in possession of the land, rent free, until July 26, 1958. This suit was instituted on May 16, 1959, in the form of trespass to try title. The appellants answered setting up, among other things, that the deed regular on its face was intended by the parties as a mere mortgage. Guadalupe E. Barrera was, of course, dead at the time of the trial, and appellants undertook to prove that the deed was merely a mortgage by circumstantial evidence.

Where a party undertakes to prove that a deed to land, while regular in every respect on its face, was in truth and in fact merely a mortgage, he must do so by evidence which is clear, unequivocal and convincing, because otherwise the natural presumption that it is what it purports to be will prevail. Griswold v. Citizens Nat. Bank in Waxahachie, Tex.Civ.App., 285 S.W.2d 791.

The consideration recited in the deed was $10 cash "and other valuable considerations," and the assumption by Gonzalez of the balance of the indebtedness owing by the Barreras to G. & G. Lumber & Hardware Company. There was no mention in the deed of the $1,030 note, or the 14,560 Pesos note. Concerning these notes Gonzalez testified as follows:

"Q. Now, these (referring to the above two notes) are still owing to you, are they not? A. Well, not owing to me now, because he has already paid by this deed, warranty deed.

"Q. In fact, you would like to collect all or something on these debts,

would you not? A. Well, not—not collect them any more, because they are already paid by this warranty deed."

It is true that two of Barrera's brothers testified that about three days after Guadalupe committed suicide, Gonzalez sent for them and told them that Guadalupe owed him some money on some notes, and if he could have back the amount of the notes he would return the deed to the property. Gonzalez denied that he made such a statement and the trial court gave weight to his testimony.

With reference to insurance money being used to pay off the G. & G. Lumber & Hardware Company note, the evidence is not very clear. It seems that G. & G. did some work on the filling station involved and took Guadalupe Barrera's note in the sum of four or five thousand dollars. This note was sold to the bank at Roma. The bank held insurance to secure the payment of the note in case of the death of Barrera before the note was fully paid. When Barrera died the insurance company paid the bank the balance due on the note. This sheds very light light on whether or not the deed was what it purported to be, or was merely a mortgage on the homestead.

I cannot agree that the trial court's implied finding that the instrument was what it purported to be, a warranty deed, was "against the great weight of the evidence." The burden of proof was upon appellants to show by the evidence that the deed, while regular on its face, was in fact a mortgage on the Barrera homestead.

It was the duty of the trial court who heard the witnesses testify and observed their conduct on the witness stand to pass upon the weight and credibility of their testimony, and we are bound by his implied finding to the effect that appellants failed to prove by clear, unequivocal and convincing evidence that the deed was intended by the parties only as a mortgage. McDonald, Texas Civil Practice, Vol. 4, p. 1301, § 16.10; Clifton v. Koontz, Tex., 325 S.W.2d

684; Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97; Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972.

I respectfully dissent.